DAWSON v. THIGPEN.

(Filed March 8, 1905).

*Nonsuit—Rights of Interpleader—Renewal—Burden of Proof.*

1. A plaintiff may elect to be nonsuited in every case where no judgment other than for costs can be recovered against him by the defendant.

2. In an action to recover possession of personal property, where the defendant has replevied the property and a third person has interpleaded, the plaintiff may take a nonsuit, but the action goes on for the interpleader.

3. In an action involving the title to property, an interpleader is restricted to the issue as to his title or claim to the property and cannot raise or litigate questions or rights which do not affect such title.

4. The taking of a second note and mortgage of itself, does not discharge the original security unless it is intended so to operate, and in the absence of any express agreement and of any circumstances showing such intention, the renewal of the note does not affect the security, and the burden is upon the mortgagor to show the existence of such an agreement.

ACTION by N. B. Dawson against I. L. Thigpen and wife, heard by *Judge Fred. Moore* and a jury, at Spring Term, 1904, of the Superior Court of EDGECOMBE County.

The plaintiff N. B. Dawson instituted this action on February 12, 1902, against the defendants Thigpen and wife for the recovery of four mules, one mare, carts, etc., and all crops raised by defendants during the year 1901. At the time of issuing the summons the plaintiff obtained an order for the immediate delivery of the property. Defendants executed an undertaking pursuant to the statute, retaining possession thereof. Defendants Thigpen and wife filed an answer denying the plaintiff's right of action and alleging that the indebtedness for which the plaintiff's mortgage was executed had been paid, except a small sum which was tendered in full satisfaction.

G. A. Stancil filed an application to interplead in said action, setting forth that the defendants were indebted to him in the sum of $550, which indebtedness was secured by mortgage registered on the 15th day of March, 1900, on the mules and other personal property claimed in plaintiff's complaint and seized by him as aforesaid. No formal order was made permitting said Stancil to interplead, but plaintiff filed an answer to his affidavit, denying his right to the property.

L. E. McDuffie filed an affidavit as a basis for the application to interplead, setting forth that she was the owner of the property claimed by the plaintiff, by virtue of crop lien and chattel mortgage recorded February 2, 1901. An order was duly made making her party defendant and permitting her to file an answer setting up any right or title she might have to the property in controversy. She thereupon filed her interplea alleging that she was the owner of the property described in the complaint by virtue of two crop liens and chattel mortgages executed by defendants Thig-

pen and wife, one recorded January 27, 1900, and the other February 2, 1901, and that there was due her on account of the indebtedness secured therein the sum of $760. The plaintiff filed an answer to her interplea, denying that she was entitled to the property and further alleging that the mortgage of January 27, 1900, had been fully discharged and that in respect to the mortgage of February 2, 1901, that said mortgage was filed for registration on the 2d February, 1901, but was withdrawn from the office of the register of deeds by the interpleader and was not returned to said office until February 2, 1902, when it was actually recorded. That plaintiff's mortgage was recorded May 3, 1901.

The case on appeal states "when the case was called for trial, the plaintiff caused the following entry to be made in the record: 'The plaintiff, N. B. Dawson, comes into court and states that he has been settled with for the amount of his claim upon the agreement of the original defendants to pay the cost and thereupon prays the Court for a nonsuit of the action so far as he is concerned. Thereupon the interpleader, Mrs. L. E. McDuffie, comes into court and applies to the Court for leave to amend her pleading,' " by alleging that since last continuance, she has learned that the plaintiff in this action received into his possession before the commencement of this action a large amount of the crops grown on the land of the defendant Thigpen, described in the mortgage and lien held by her. That said crops were not taken by the sheriff pursuant to the process in this action. That the plaintiff should account to her for the value of the said property and crops so received. Thereupon the following entry is made: "The Court in its discretion would permit the interpleader to file the amendment to her pleadings as above requested; but believing the Court has no power to allow such amendment, after the announcement made by the plaintiff, declines to allow the amendment to be made for want of

power, to which ruling the interpleader Mrs. McDuffie excepts." The Court thereupon submitted the following issues:

"1. Is the interpleader Mrs. L. E. McDuffie the owner, by virtue of the crop lien and chattel mortgage introduced, of the crops in controversy?" Ans. "Yes."

"2. What was the value of said crops at the time of the seizure?" Ans. "$189.25."

"3. Is the interpleader Mrs. L. E. McDuffie the owner, by virtue of the crop liens and chattel mortgages introduced by her, of the personal property in controversy, or any part thereof, and if only a part, what part?" Ans. "Yes, of the personal property, except the hoes, the hames and the weeder; but the mules and mare are subject to G. A. Stancil's mortgage."

"4. What was the value of said personal property at the time of the seizure?" Ans. "The value of the mules and mare is $335, and the value of the other property is $54.63."

"5. Are the defendants indebted to the interpleader Mrs. McDuffie on account of the bond and crop lien and chattel mortgage introduced, and if so, in what sum?" Ans. "One thousand dollars and interest, as shown by the note, less $300, as credited on note."

"6. Is the interpleader G. A. Stancil the owner, by virtue of the chattel mortgage and crop lien introduced by him, of the personal property in controversy, or any part thereof, and if only a part, what part?" Ans. "Yes, of the mules and mare."

"7. What was the value of such personal property at the date of the seizure?" Ans. "$335."

"8. Are the defendants indebted to the interpleader G. A. Stancil on account of the chattel mortgage and crop lien introduced, and if so, in what sum?" Ans. "Yes, $550, with interest from November 1, 1900."

137——30

"9. As between the interpleaders, Mrs. L. E. McDuffie and G. A. Stancil, which has the first lien on the mules and mare in controversy?" Ans. "G. A. Stancil."

Mrs. McDuffie introduced testimony tending to show the value of the property seized in this action. She also introduced a bond, dated January 19, 1901, for one thousand dollars for agricultural advances, subject to a credit of $300; also bond for $1,000, payable to her, dated January 11, 1900, the witness testifying that Mrs. McDuffie delivered the papers to her attorney, that she had them in her possession, that he was not and had never been her agent, that he did not know there was anything due on the note of 1900, that it was in the possession of the interpleader and not marked paid.

The interpleader Stancil put in evidence the original mortgage and lien made to him by defendants, recorded March 5, 1900, for $750. He then introduced the defendant Thigpen, who testified that he did not owe anything on the note of 1900 to Mrs. McDuffie; that the note of 1901 was given to renew the note of 1900; that he borrowed one thousand dollars from her in 1898 and executed a mortgage on his property and crops; that each year he gave a new note and mortgage; that in 1901 he gave the note to D. E. Cobb for Mrs. McDuffie, who was away from home. "We had no agreement. I prepared a new note and lien and gave it to Cobb for Mrs. McDuffie. After she came back I asked Cobb to get it for me. Mrs. McDuffie boarded at his house. The note of January, 1901, was given to take up a prior note. It was given to renew a debt due November 1, 1900." To this testimony Mrs. McDuffie excepted. The witness further testified that he executed a lien and mortgage to G. A. Stancil, and that there was due on it a balance of $550; that Mrs. McDuffie did not furnish any money to make the crop; that each year he would go to her with a new note and mortgage,

and that she was satisfied; that he kept the lien and paid her interest on it; that the team described in the mortgages of Mrs. McDuffie was the same as described in the mortgage to Stancil.

The Court charged the jury that if they believed the evidence, and if there was a balance due on the Stancil debt, he was entitled to recover the possession of the property, and that they should answer the sixth issue "Yes" and the ninth issue "G. A. Stancil." Mrs. McDuffie excepted. She assigns as error, first, the refusal of the Court to permit her to amend her plea, and permitting the plaintiff to take a non-suit; second, the instruction to the jury that the mules, etc., were the property of Stancil. She appealed from the judgment rendered.

*G. M. T. Fountain* and *John L. Bridgers,* for appellant.
*Gilliam & Gilliam,* for appellees.

CONNOR, J., after stating the facts. The assignments of error present but two questions for our consideration: First, the right of the plaintiff to withdraw from the action pending the controversy, by taking a nonsuit. He had, by the order of the Court, at the institution of the action, procured the seizure of the property and the defendants had retained it by filing the undertaking, which was available to the plaintiff only in the event of a recovery. While the complaint does not set out the source of the plaintiff's claim to the property, it does allege an indebtedness by the defendants, and they in their answer admit the execution of a mortgage to the plaintiff to secure the payment of the same indebtedness. It is also manifest from the pleadings that the controversy arose out of conflicting claims, based upon several mortgages executed by defendant Thigpen to the plaintiff and the interpleader. It is well settled that in an action involving the title to property, an interpleader is restricted to the issue as

to his title or claim to the property, and cannot raise or litigate questions or rights which do not affect such title. *McLean v. Douglass,* 28 N. C., 233. He does not, speaking with accuracy, become a party to the action in the same sense and with the same status as the original parties, or those made so pending the action either by the Court *ex mero motu* or upon application. In *McKesson v. Mendenhall,* 64 N. C., 502, *Rodman, J.,* states the rule in regard to the rights of the original plaintiff to take a voluntary nonsuit: "The principle seems to be that a plaintiff may elect to be nonsuited in every case when no judgment, other than for costs, can be recovered against him by the defendant, and when such judgment can be recovered, he cannot." If the plaintiff had taken the property into his possession and retained it, he could not, either as against the defendant or the interpleader, have submitted to a nonsuit and gone out of court by simply paying the costs. *Manix v. Howard,* 82 N. C., 125. In the case before us, the property having been retained by the defendants, it was open to the interpleader by complying with the provision of section 331 of The Code, to either secure possession of the property or an undertaking for its delivery or the value thereof. It would seem to be clear that in no event could the interpleader recover any other judgment against the plaintiff than for costs. If he had received from the defendants crops to which the interpleader was entitled he was liable therefor in a separate action. By moving for judgment of nonsuit, the plaintiff conceded that he was not entitled to the property in controversy. This was all that in any event the interpleader, as against the plaintiff, was entitled to. We are of opinion that his Honor properly permitted the plaintiff to submit to the nonsuit.

In *McKesson v. Mendenhall, supra,* it is held that although nonsuited, the action would go on for the interpleader, and the person nonsuited would be bound by the result of the suit

as privy thereto.  This is an additional reason for sustaining the ruling of the Court below.  The plaintiff is bound by his action, and cannot again assert title to the property.  This in no degree affected the right of the interpleaders to litigate as between themselves the title to the property and their interests therein.

In regard to the second assignment of error: The instruction of the jury that the mules were the property of Stancil. We are of opinion that his Honor should have submitted to the jury the question as to the intent with which the second mortgage was executed by Thigpen and received by the interpleader.  It will be noted that she held the mortgage on the personal property, recorded January 27, 1900, and that on February 2, 1901, the mortgagor signed and sent to her a mortgage by one D. E. Cobb.  Cobb testified that he was not her agent and had never been, and that he simply delivered the mortgage to her.  The defendant Thigpen testified that he executed a mortgage of January, 1900, and that he prepared a new note and lien and gave it to Cobb, January, 1901; that there was no agreement between them; that it was given to renew the debt due November 1, 1900.  She retained both notes and mortgages.  It may well be that she accepted the note and mortgage of 1901 for the purpose of securing a mortgage on the crop of that year, retaining the original mortgage as the first lien on the personal property. Thigpen had executed a mortgage on the same property to Stancil, recorded March 5, 1900.  If she had notice of this mortgage, it would explain her conduct in retaining her mortgage registered prior thereto.  However this may be, it was a question for the jury to decide.

In *Smith v. Bynum,* 92 N. C., 108, it was held that when there was a settlement between the mortgagor and mortgagee, and a new note and mortgage taken, the property in the first mortgage was released.  *Ashe, J.,* says: "If the plaintiff had

not come to a settlement with the mortgagor and taken a new note with another mortgage to secure it, his lien under that mortgage would have continued and he would have had the right to recover in this action; but by his settlement, etc., the mortgage of January, 1882, was discharged." The decision is based upon the fact that the parties came to a settlement. In *Joyner v. Stancill,* 108 N. C., 153, the referee expressly found that Stancill "accepted said note in full satisfaction of, and in payment of and in discharge of said Rountree & Co.'s note * * * and treated it as a discharge of pre-existing securities." *Shepherd, J.,* after reviewing the decision, says that "The finding of the referee is explicit upon this point, that the new note was accepted in full satisfaction of and in payment of the former one." These cases are distinguished from *Hyman v. Devereux,* 63 N. C., 624; *Vick v. Smith,* 83 N. C., 80, and *Collins v. Davis,* 132 N. C., 106, by the fact that a settlement was had and a new note taken in payment of the discharge of the original. The general rule is well settled that the taking of a second note and mortgage, of itself, does not discharge the original security, unless it is intended so to operate. Jones on Mortgages (6 Ed.), sec. 924. "Whether a new note shall be treated and have effect between the parties as a payment of a former one for which it is substituted, will depend upon the purpose and understanding of the parties to the transaction; but not only will the intention of the parties be determined by the express agreement of the parties, but, in the absence of this, by the circumstances attending the transaction from which such intention may be inferred. * * * In the absence of any express agreement and of any circumstances showing intention, the renewal of the note does not affect the security. The burden is upon the mortgagor to show the existence of an agreement that the mortgage lien should be released upon the execution of the new note, and not upon the mortgagee to

show an agreement that the mortgage should continue as a security for the debt covered by the new note." *Ibid.,* sec. 926. Again, "the taking of further security for the mortgage debt, whether it be by a second mortgage upon the same land, or real or personal security upon other property, is generally no waiver of the original mortgage." *Ibid.,* sec. 929.

There was evidence fit to be considered by the jury upon the issue, with what intent Thigpen executed and Mrs. McDuffie received the note and mortgage of January 1, 1901. This exception of Mrs. McDuffie therefore must be sustained and a new trial ordered upon the third, sixth and ninth issues. In view of our decision, we are of opinion that the costs should be divided equally between the appellant Mrs. McDuffie and the interpleader Stancil. Let this be certified to the Court below.

New Trial.